UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD A.M.,[1] <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 2:20-cv-06467-JC <br><br> MEMORANDUM OPINION AND ORDER OF REMAND |

## I. SUMMARY

On July 21, 2020, plaintiff filed a Complaint seeking review of the Commissioner of Social Security's denial of his application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross-motions for summary judgment (respectively, "Plaintiff's Motion" and "Defendant's Motion"). The Court has taken the parties' arguments under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; Case Management Order ¶ 3.

---

[1] Plaintiff's name is partially redacted to protect his privacy in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On July 24, 2017, plaintiff, who was born on July 27, 1997, protectively filed an application for Supplemental Security Income, alleging disability beginning on March 1, 2017, due to schizophrenia, stress, anxiety, and agitation. (See Administrative Record ("AR") 18, 164, 179). An Administrative Law Judge ("ALJ") subsequently examined the medical record and, on August 27, 2019, heard testimony from plaintiff (who was represented by counsel), plaintiff's grandmother, and a vocational expert. (AR 36-63). On September 12, 2019, the ALJ determined that plaintiff has not been disabled since July 24, 2017, the application date. (AR 18-29). Specifically, the ALJ found: (1) plaintiff has the following severe impairments: depression, catatonic schizophrenia, psychosis, learning disorder, intellectual disorder, substance abuse, and post-traumatic stress disorder (AR 20); (2) plaintiff's impairments, considered individually or in combination, do not meet or medically equal a listed impairment (AR 20); (3) plaintiff retains the residual functional capacity (or "RFC")[2] to perform a full range of work with certain nonexertional limitations[3] (AR 23); (4) plaintiff has no past relevant work (AR 27); (5) plaintiff is capable of performing other jobs that exist in significant numbers in the national economy, specifically store laborer, conveyor feeder, and marker (AR 28); and (6) plaintiff's statements regarding the

---

[2]Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 416.945(a)(1).

[3]The ALJ determined that plaintiff can perform unskilled (simple, routine, repetitive tasks) work that is not at a production rate or fast pace; and can have occasional interaction with coworkers and supervisors, but no interaction with the general public. (AR 23).

intensity, persistence, and limiting effects of subjective symptoms were inconsistent with the medical evidence and other evidence in the record (AR 24).

On June 23, 2020, the Appeals Council denied plaintiff's application for review of the ALJ's decision. (AR 1-3).

## III. APPLICABLE LEGAL STANDARDS

### A. Administrative Evaluation of Disability Claims

To qualify for disability benefits, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted), superseded by regulation on other grounds; 20 C.F.R. § 416.905. To be considered disabled, a claimant must have an impairment of such severity that he is incapable of performing work the claimant previously performed ("past relevant work") as well as any other "work which exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

To assess whether a claimant is disabled, an ALJ is required to use the five-step sequential evaluation process set forth in Social Security regulations. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006) (describing five-step sequential evaluation process) (citing 20 C.F.R. §§ 404.1520, 416.920). The claimant has the burden of proof at steps one through four – *i.e.*, determination of whether the claimant was engaging in substantial gainful activity (step 1), has a sufficiently severe impairment (step 2), has an impairment or combination of impairments that meets or medically equals one of the conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") (step 3), and retains the residual functional capacity to perform past relevant work (step 4). Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). The

Commissioner has the burden of proof at step five – *i.e.*, establishing that the claimant could perform other work in the national economy. Id.

### B. Federal Court Review of Social Security Disability Decisions

A federal court may set aside a denial of benefits only when the Commissioner's "final decision" was "based on legal error or not supported by substantial evidence in the record." 42 U.S.C. § 405(g); Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted). The standard of review in disability cases is "highly deferential." Rounds v. Comm'r of Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation marks omitted). Thus, an ALJ's decision must be upheld if the evidence could reasonably support either affirming or reversing the decision. Trevizo, 871 F.3d at 674-75 (citations omitted). Even when an ALJ's decision contains error, it must be affirmed if the error was harmless. See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if (1) inconsequential to the ultimate nondisability determination; or (2) ALJ's path may reasonably be discerned despite the error) (citation and quotation marks omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Trevizo, 871 F.3d at 674 (defining "substantial evidence" as "more than a mere scintilla, but less than a preponderance") (citation and quotation marks omitted). When determining whether substantial evidence supports an ALJ's finding, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion[.]" Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

Federal courts review only the reasoning the ALJ provided, and may not affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely." Trevizo, 871 F.3d at 675 (citations omitted). Hence, while an ALJ's decision need not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's

reasoning "in a way that allows for meaningful review." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record. Brown-Hunter, 806 F.3d at 492 (citations omitted). When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

## IV.   DISCUSSION

Plaintiff claims that the ALJ failed to properly evaluate the statements and testimony from plaintiff's father and grandmother, among other grounds.[4] (See Plaintiff's Motion at 18-24). For the reasons stated below, the Court finds that the ALJ erred on this basis. Since the Court cannot find that the error was harmless, a remand is warranted.

### A.   Pertinent Law

In assessing disability, an ALJ must account for testimony and written statements from lay witnesses concerning a claimant's symptoms or how an impairment affects the claimant's ability to work (collectively "lay evidence"). Stout, 454 F.3d at 1053 (citing, in part, Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)). Such competent lay evidence "*cannot* be disregarded without comment." Molina, 674 F.3d at 1114 (citing, in part, Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)) (quotation marks omitted; emphasis in original); see also Tobeler v. Colvin, 749 F.3d 830, 833-34 (9th Cir. 2014) (citations omitted). To reject such lay witness evidence, an ALJ must give specific "reasons that are germane to each witness." Molina, 674 F.3d at 1114 (citing Dodrill, 12 F.3d at

---

[4] Plaintiff also claims the ALJ erred by failing to properly evaluate the medical opinion evidence and determine whether plaintiff met the criteria for Listings 12.03, 12.05, and 12.15. (Plaintiff's Motion at 3-18).

5

1  919); see also Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) ("[T]he
2  reasons 'germane to each witness' must be specific.") (citation omitted); Stout, 454
3  F.3d at 1054 ("[T]he ALJ, not the district court, is required to provide specific
4  reasons for rejecting lay testimony") (citation omitted).

5        Even when an ALJ fails properly to account for competent lay evidence,
6  reversal still is not warranted if the ALJ's error was harmless. Id. at 1122
7  (citations omitted). Such errors may be deemed harmless only if a reviewing court
8  "can confidently conclude that no reasonable ALJ, when fully crediting the
9  [omitted lay evidence], could have reached a different disability determination."
10 Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout,
11 454 F.3d at 1055-56).

### B. Third-Party Statements and Testimony

#### 1. Father

14       Plaintiff's father stated the following in an August 2017 third-party function
15 report (AR 192-99):

16       Plaintiff was very quiet and withdrawn and had "no concentration." (AR
17 192-93). Plaintiff had a hard time understanding, remembering, and following
18 instructions. (AR 197). He needed to be supervised and told multiple times. (AR
19 197). He could pay attention for about 1-3 minutes. (AR 197). To complete
20 chores and maintain personal care, plaintiff needed constant reminders and
21 encouragement, as well as "follow-up" to make sure the chore was finished. (AR
22 192-94). When reminded, plaintiff would take out the trash, do a load of laundry,
23 or vacuum. (AR 194). He shut down when he became stressed, and he did poorly
24 with changes in routine. (AR 198). When going out, plaintiff needed supervision,
25 as he would "sometimes forget[] to look both ways when crossing the street." (AR
26 195). Plaintiff did not drive due to his "[a]bnormal activities," "hand and head
27 tics," inability to focus, and hallucinations that impaired his daily function. (AR
28 195). Plaintiff had a hard time getting along with others due to his schizophrenia.

(AR 197). He sometimes talked to himself or would start yelling at someone who was not there. (AR 198). His hobbies included skateboarding, drawing, and listening to music. (AR 196).

### 2. Grandmother

Plaintiff's grandmother, Rosalinda, with whom plaintiff lived, testified as follows at the August 2019 hearing (AR 48-58):

Plaintiff "forgets everything." (AR 56). Soon after being told to do something, plaintiff would sometimes come right back to ask, "what did you tell me to do?" (AR 56). On the way to the hearing, for example, plaintiff asked where they were going, even though his father and grandmother had both told him earlier. (AR 56). Plaintiff was unable to follow instructions to do laundry properly. (AR 55). He also could not cook without supervision because he left the gas on multiple times. (AR 55). Plaintiff needed to be told to take out the trash or rake the leaves in the yard, and even then, he sometimes just said he would do it "later" and never actually do it. (AR 56). He had to be reminded to brush his teeth and maintain hygiene, and he generally did not clean his own room and would just throw things on the floor. (AR 49). He also lacked enough concentration to watch a movie, so he tended to just walk in and out of the theater or fall asleep even during a loud action movie. (AR 57).

Plaintiff talked to himself all the time, though he sometimes denied hearing voices. (AR 55, 57). He also experienced hallucinations. About six or seven times a month, he would need to sleep with the lights on due to hallucinations that made him afraid of the closet in his room. (AR 54-55). Sometimes plaintiff slept "a lot," but sometimes he went two or three days without sleeping. (AR 50). When he did not sleep, his behavior became more erratic. (AR 49). In such times, he would "tie[] rubber bands" in different places on his body and clothes, nervously pace around, and "start[] tearing the room apart" and "going through all the drawers." (AR 49-50). Plaintiff liked to "hang around 7-Eleven," but he

would generally "just stand[] there" or ask people for money, and sometimes he just lay on the floor "at 7-Eleven or wherever he's at." (AR 51).

Before he was prescribed his medications, plaintiff "was out of control" and "hitting walls," but his anger issues significantly improved with medication. (AR 52). His grandmother made sure he took his medication every day. (AR 52). She also took him to all his appointments. (AR 51). He did not have a driver's license, and the one time he tried taking the bus, he got lost, and the police finally found him walking down the street at 4 a.m. (AR 50-51).

### C. Analysis

In the decision, the ALJ briefly summarized the statements by plaintiff and his father and grandmother and then remarked that *plaintiff's* statements about the extent of his symptoms were inconsistent with the evidence. (AR 23). The ALJ never expressly evaluated the third-party statements.

Defendant argues that the ALJ did not err on this point, in part because the third-party statements "support the ALJ's determination that [p]laintiff's condition improved with treatment, and that he was capable of performing simple, repetitive tasks with limited social interactions." (Defendant's Motion at 24). This is incorrect. Although the third-party statements and other evidence do reflect that plaintiff showed certain improvements on medication – particularly in reducing his symptoms related to psychosis (*e.g.*, auditory and visual hallucinations), anger, and difficulty communicating and socializing (see AR 52, 387, 427, 496) – the statements by plaintiff's father and grandmother also reflect that plaintiff nonetheless continued to require constant prompting, reminders, and supervision to initiate and complete even simple, routine activities. (See AR 49, 55-56, 192-94, 97, 380, 387). For example, while plaintiff's father reported in June and August 2017 that medication had helped improve plaintiff's "cognition," and made him calmer and less "blunted," he also noted that plaintiff still needed prompting to attend to basic hygiene and activities of daily living. (AR 380, 387). These

difficulties evidently persisted when plaintiff's grandmother testified in August 2019, after plaintiff had undergone more than two years of treatment and medication. As noted above, she testified that plaintiff still needed to be prompted or reminded to brush his teeth or take out the trash. (AR 49, 56). She also indicated that plaintiff had a tendency to leave tasks uncompleted and would leave the gas on after cooking alone. (AR 55-56). She further reported that plaintiff needed prompting and supervision to attend his appointments and take his medication. (See AR 51-52, 503).

      The ALJ's assessment – which limited plaintiff to performing "simple, repetitive tasks," with no requirement of close supervision or similar accommodation (see AR 23) – does not account for these third-party statements.[5] The ALJ was therefore required to give specific, germane reasons for rejecting these statements. See Molina, 674 F.3d at 1114; Bruce, 557 F.3d at 1115. Instead, the ALJ failed to state any reasons or provide any specific evaluation of them.

///

---

[5]Instead, the third-party statements on this issue are arguably consistent with some of the medical opinions that the ALJ expressly rejected, purportedly based on their lack of support or consistency with the record, including evidence of improvement on medication. (See AR 25-26). For example, Jennifer Merica, a nurse practitioner who had treated plaintiff since 2017, opined on June 25, 2019, that plaintiff was markedly limited in his abilities "to maintain attention and concentration for extended periods"; "to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; "to sustain an ordinary routine without special supervision"; and "to complete a normal workday and workweek without interruptions from psychologically based symptoms," among other marked and moderate limitations. (AR 510-13). Dr. Tagbo Arene, M.D., a consultive examiner, opined on November 12, 2017, that plaintiff had a moderately limited ability "to perform activities within a schedule and maintain regular attendance" and "to complete a normal workday/ workweek without interruption from psych based symptoms." (AR 400). The ALJ specifically rejected these latter assessments by Dr. Arene on the ground that plaintiff had "been able to attend treatment on a regular basis and maintain adherence to his medication regimen, which has in turn greatly improved his functioning." (AR 26). As noted above, however, plaintiff continued to require prompting and supervision to adhere to his treatment and medication regimen (see AR 51-52, 503), and the ALJ failed to identify any evidence of improvement in these areas of functioning.

Defendant contends that the ALJ's reasons for discounting plaintiff's testimony also suffice to discount the third-party statements.[6] (Defendant's Motion at 23-24). However, the ALJ discounted plaintiff's allegations in part because the record contradicted some of his statements about when he last used amphetamines and when he began experiencing hallucinations. (AR 24). Contradictions like these were unsurprising; plaintiff's counsel had advised the ALJ at the hearing that plaintiff's testimony "may not be entirely reliable," which counsel stated was "a function of his mental problems." (AR 41). This basis for discounting plaintiff's statements does not apply to the third-party statements. Indeed, plaintiff's unreliability arguably renders the third-party statements more valuable to assess plaintiff's symptoms and limitations.

Otherwise, the ALJ discounted plaintiff's statements based on the ALJ's determination that plaintiff's symptoms improved with medication. (See AR 24-25). For the reasons explained above, that is not a germane reason to reject the statements at issue here. The ALJ failed to point to any evidence indicating that plaintiff's medications significantly improved his ability to complete tasks effectively without frequent reminders and supervision. To the extent that the ALJ rejected the third-party statements because plaintiff experienced certain limited improvements on medication, the ALJ erred by failing to consider the evidence as a whole. Cf. Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."); Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014) (ALJ erred by finding claimant's daily activities conflicted with treating providers' assessment of severe limitations because "[a]lthough

---

[6]The Court does not address whether the ALJ appropriately discounted plaintiff's statements or testimony, as plaintiff has not expressly raised that issue here.

[claimant] performed some basic chores and occasionally socialized, the record also reveals that he relied heavily on his caretaker, struggled with social interactions, and limited himself to low-stress environments[;] [a] claimant need not be completely incapacitated to receive benefits.") (citing Smolen v. Chater, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996)).

Accordingly, the ALJ erred by failing to provide specific, germane reasons to reject the third-party statements in the record, and the Court cannot "confidently conclude that no reasonable ALJ, when fully crediting the rejected lay evidence, could have reached a different disability determination." Stout, 454 F.3d at 1055-56. Remand is therefore warranted for reconsideration of this evidence.[7]

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is REVERSED and this matter is REMANDED for further administrative action consistent with this Opinion.[8]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: February 7, 2022

                                                        /s/
                                      Honorable Jacqueline Chooljian
                                      UNITED STATES MAGISTRATE JUDGE

---

[7] The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[8] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted); Treichler, 775 F.3d at 1099 (noting such "ordinary remand rule" applies in Social Security cases) (citations omitted). The Court has determined that a reversal and remand for immediate payment of benefits would not be appropriate.